UNITED STATES EX REL. McLENNAN *v.* WILBUR, SECRETARY OF THE INTERIOR.

UNITED STATES EX REL. SIMPSON *v.* WILBUR, SECRETARY OF THE INTERIOR, ET AL.

UNITED STATES EX REL. BARTON *v.* ' WILBUR, SECRETARY OF THE INTERIOR.

UNITED STATES EX REL. PYRON *v.* WILBUR, SECRETARY OF THE INTERIOR, ET AL.

Nos. 618, 676, 704, 743. Argued April 15, 16, 1931.—Decided May 18, 1931.

*Messrs. Lewis Edwin Hoffman* and *Chester I. Long* for McLennan.

*Mr. Homer Hendricks,* with whom *Messrs. Donald V. Hunter* and *James C. Sheppard* were on the brief, for Simpson.

*Mr. James Conlon,* with whom *Mr. Charles F. Breen* was on the brief, for Barton.

*Mr. James G. Leovy,* with whom *Messrs. John W. Fisher, A. W. Gregg,* and *Weston Vernon, Jr.,* were on the brief, for Pyron.

*Assistant Attorney General Richardson,* with whom *Solicitor General Thacher, Messrs. Claude R. Branch* and *Aubrey Lawrence,* Special Assistants to the Attorney General, and *Paul D. Miller* were on the brief, for respondents.

*Messrs. James A. Greenwood,* Attorney General of Wyoming, and *Clarence L. Ireland,* Attorney General of

Colorado, with whom *Messrs. L. A. Foot,* Attorney General of Montana, *George P. Parker,* Attorney General of Utah, *E. K. Neumann,* Attorney General of New Mexico, and *Peter Q. Nyce* were on the brief, as *amici curiae,* by special leave of Court.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

All these causes turn on the same point of law; the records disclose facts not materially different; one opinion will suffice.

The Act of Congress approved February 25, 1920, 41 Stat. 437, intended to promote certain mining operations, contains thirty-eight sections.

Section 1. " That deposits of coal, phosphate, sodium, oil, oil shale, or gas, and lands containing such deposits owned by the United States, . . . shall be subject to disposition in the form and manner provided by this Act . . . ."

" Sec. 13. That the Secretary of the Interior is hereby authorized, under such necessary and proper rules and regulations as he may prescribe, to grant to any applicant qualified under this Act a prospecting permit, which shall give the exclusive right, for a period not exceeding two years, to prospect for oil or gas upon not to exceed two thousand five hundred and sixty acres of land wherein such deposits belong to the United States and are not within any known geological structure of a producing oil or gas field upon condition that the permittee shall begin drilling operations within six months from the date of the permit, and shall, within one year from and after the date of permit, drill one or more wells for oil or gas to a depth of not less than five hundred feet each, unless valuable deposits of oil or gas shall be sooner discovered, and shall, within two years from date of the permit, drill for oil or

gas to an aggregate depth of not less than two thousand feet unless valuable deposits of oil or gas shall be sooner discovered. . . ."

" Sec. 14. That upon establishing to the satisfaction of the Secretary of the Interior that valuable deposits of oil or gas have been discovered within the limits of the land embraced in any permit, the permittee shall be entitled to a lease for one-fourth of the land embraced in the prospecting permit: . . ."

Section 9 authorizes the Secretary to lease lands containing deposits of phosphates under such general regulation as he may adopt. By § 17 unappropriated deposits of oil or gas situated within the known geologic structure of a producing oil or gas field " may be leased by the Secretary of the Interior to the highest responsible bidder, . . ." such leases to be conditioned upon the payment by the lessee of such bonus as may be accepted and of such royalty as may be fixed in the lease, etc. Section 21 authorizes the Secretary to lease deposits of oil shale under such regulations as he may prescribe, for indefinite periods.

Section 2 declares that the Secretary " is authorized to, and upon the petition of any qualified applicant shall, divide any of the coal lands or the deposits of coal, classified and unclassified, owned by the United States, outside of the Territory of Alaska, into leasing tracts of forty acres each, . . ." and thereafter " shall, in his discretion, upon the request of any qualified applicant or on his own motion, from time to time, offer such lands or deposits of coal for leasing, and shall award leases thereon by competitive bidding or by such other methods as he may by general regulations adopt, to any qualified applicant. . . ."

" Sec. 22. That any bona fide occupant or claimant of oil or gas bearing lands in the Territory of Alaska, who, or whose predecessors in interest, prior to withdrawal had

complied otherwise with the requirements of the mining laws, but had made no discovery of oil or gas in wells and who prior to withdrawal had made substantial improvements for the discovery of oil or gas on or for each location or had prior to the passage of this Act expended not less than $250 in improvements on or for each location shall be entitled, upon relinquishment or surrender to the United States within one year from the date of this Act, or within six months after final denial or withdrawal of application for patent, to a prospecting permit or permits, lease or leases, under this Act covering such lands, . . ."

Section 23. That the Secretary " is hereby authorized and directed, under such rules and regulations as he may prescribe, to grant to any qualified applicant a prospecting permit which shall give the exclusive right to prospect for chlorides, sulphates, carbonates, borates, silicates, or nitrates of sodium . . ."

These provisions quite plainly indicate that Congress held in mind the distinction between a positive mandate to the Secretary and permission to take certain action in his discretion. Also, the difference between applicants for mere privileges and those persons who because of expenditures, or otherwise, deserved special consideration.

The petitioners, acting separately and as directed by the general rules and regulations, either filed or sought to file applications for permits to prospect for oil and gas under § 13. In order to effectuate the conservation policy of the President, the Secretary of the Interior by a general order either rejected or refused to receive their applications. Thereupon, these proceedings were begun in the Supreme Court, District of Columbia. They seek writs of mandamus to compel the Secretary to receive or reinstate the applications and act upon each according to its merits.

Answering, the Secretary admitted issuance of the general order and action thereunder. All this he claimed was done in pursuance of the authority vested in him by law. The Supreme Court of the District held against him and ordered receipt or reinstatement of petitioner's applications followed by definite action thereon. The Court of Appeals reached a different conclusion and reversed the judgments.

The answers aver " that under the Act, [1920] the granting of a prospecting permit for oil and gas is discretionary with the Secretary of the Interior, and any application may be granted or denied, either in part or in its entirety as the facts may be deemed to warrant." Having examined the Act we cannot say that by any clear and indisputable language it refutes his position. Certainly, there is ground for a plausible, if not conclusive, argument that so far as it relates to the leasing of oil lands it goes no further than to empower the Secretary to execute leases which, exercising a reasonable discretion, he may think would promote the public welfare.

It is unnecessary now to declare the precise meaning of the relevant provisions of the Act. It was passed when according to a widely accepted view decline of petroleum production in the United States was imminent. In fact, there has been an enormous increase and a consequent troublesome surplus. Looking only at its words one may interpret § 13 as the Secretary says he did. And this conclusion is aided by consideration of his general powers over the public lands as guardian of the people. § 441, R. S.; *United States* v. *Grimaud,* 220 U. S. 506; *Williams* v. *United States,* 138 U. S. 514; *Knight* v. *U. S. Land Assn.,* 142 U. S. 161; also the right of the President to withdraw public lands from private appropriation. *United States* v. *Midwest Oil Co.,* 236 U. S. 459; Withdrawal Act, 1910, 36 Stat. 847.

Under the established rule the writ of mandamus cannot be made to serve the purpose of an ordinary suit. It will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable. *U. S. ex rel. International Contracting Co.* v. *Lamont,* 155 U. S. 303, 308; *Louisiana* v. *McAdoo,* 234 U. S. 627, 633; *Work* v. *Rives,* 267 U. S. 175.

The judgments under review must be

*Affirmed.*