**Louis W. GREENBLATT, Petitioner,**

v.

**C. Douglas DILLON, Secretary of the Treasury of the United States, Washington, D. C., Margaret W. Schwartz, Acting Director, Foreign Assets Control, Department of the Treasury of the United States, Washington, D. C., and Anton Sestric, Collector of Customs, St. Louis, Missouri, Defendants.**

**No. 64 C 119(1).**

United States District Court
E. D. Missouri, E. D.
Dec. 28, 1964.

Norman Barken, St. Louis, Mo., for petitioner.

Richard D. FitzGibbon, Jr., U. S. Atty., Donald L. Schmidt, Asst. U. S. Atty., St. Louis, Mo., for defendants.

HARPER, District Judge.

In January of 1961, plaintiff purchased various items of antique Chinese furniture for his home while in Singapore, Malaysia. When the furniture was shipped to plaintiff in St. Louis, Missouri, it was detained by Customs under the Foreign Assets Control Regulations (31 C.F.R. Part 500). An application

for a Treasury license authorizing the import of the furniture was denied and upon a request for reconsideration it was again denied because of a lack of proper documentation of the origin of the property.

The plaintiff brought this suit against the Secretary of the Treasury, the Director of the Foreign Assets Control of the Department of the Treasury, and the Collector of Customs of St. Louis, Missouri, and alleges that the tests applied to plaintiff's property to determine his right to an import license are arbitrary, capricious, and unreasonable, and an abuse of the administrative authority of the defendant Secretary of the Treasury, and "goes beyond the intent of the Congress of the United States in attempting to deprive the Communistic Chinese Regime of United States Dollars."

Plaintiff's prayer asks this court to find the regulations relied upon to be arbitrary and capricious, that plaintiff has reasonably complied with the requirements intended by Congress, and to order the defendant or defendants to issue the necessary Treasury license for the release and importation of plaintiff's furniture. Jurisdiction is based upon 28 U.S.C. §§ 1361 and 1391(e) as an action in the nature of mandamus to compel an officer of the United States to perform a duty owed to the plaintiff.

The basis for the refusal to license the imports is the Trading with the Enemy Act, as amended (50 U.S.C. App. § 5(b)) and Executive Order 9193 whereby the President delegated all powers and authority conferred upon him by the mentioned act to the Secretary of the Treasury or any person, agency, etc., designated by him. Within the organization of the Treasury Department, the authority to take final licensing action on applications for specific licenses permitting certain transactions prohibited by the regulations is delegated to the Federal Reserve Bank of New York, subject to the policies and procedures prescribed by the Division of Foreign Assets Control (15 F.R. 776, January 27, 1951).

It was when the antiques were detained by Customs that plaintiff applied for a Treasury license to import them. Based upon the Trading with the Enemy Act, the Foreign Assets Control Regulations prohibit all commercial and financial dealings with Communist China, North Korea and North Viet-Nam and their nationals or in property in which those nationals have had an interest since December 17, 1950 (date of issuance of the Regulations), specifically, dealings in merchandise if it is of Chinese-type antiques (31 C.F.R. 500.204 (a) (2) (ii)). In its denial of plaintiff's licence application, the Foreign Assets Control division stated in its letter of June 29, 1961, to Koeller-Struss Company, that it would reconsider plaintiff's application upon submission of "(1) detailed identification of the merchandise, and (2) clear and complete proof, including appropriate documentary evidence, of the location of the merchandise on and since December 17, 1950, and of the ownership and all other interests in the merchandise on and since such date and that such owners or persons having any interest are not designated nationals. Affidavits from processors, sellers or shippers in third countries as to these facts will not be regarded as sufficient proof." (Part of Exhibit A.)

Plaintiff thereafter requested reconsideration of his application and attached copies of invoices provided him by the seller, each bearing the statement, "We hereby certify that the above article is antique and not Red China origin." (Part of Exhibit A, Exhibit 3 and part of Exhibit 4.) However, the original decision not to license remained unchanged. Petitioner's attorney later submitted a "statutory declaration" by the seller of the antiques, sworn to before the United States Consul at Singapore, stating that "the said articles are not of Communist Chinese origin subsequent to the 17th day of December, 1950," and that he conscientiously believed that fact to be true. The Fed-

eral Reserve Bank of New York, however, held that this did not constitute adequate proof of a lack of Communist Chinese interest in the property as intended by the Foreign Assets Control Regulations. The letter of Chas. A. Sullivan, Assistant to the Secretary, Treasury Department, dated November 7, 1963, to the plaintiff's attorney (Part of Exhibit C), sets out in considerable detail the standards of proof required with respect to Chinese antiques. These requirements were not met by the plaintiff.

Plaintiff asserts as the only issue before the court that the tests adopted by the Department of Treasury to ascertain origin for issue of an import license are arbitrary, capricious, and unreasonable, and have denied plaintiff possession of his property.

Plaintiff does not contest the applicable statute, and the regulations adopted by the Treasury Department pursuant to that statute have been approved on several other occasions. United States v. China Daily News, 2 Cir., 224 F.2d 670; Landes v. Humphrey, 101 U.S.App.D.C. 16, 246 F.2d 703; United States v. Quong, 6 Cir., 303 F.2d 499.

█ There is little comment to be made over the harshness of the effect of these regulations on plaintiff, for he will obviously be prevented from possessing and enjoying the property he has rightfully purchased. However, this fact does not compel the court to conclude that the test used is necessarily arbitrary or unreasonable, especially in consideration of the purpose intended by the statute. It was the original intent of Congress in adopting the Act to deny the enemies of the United States trade with United States nationals, and the more recent object has been the Chinese Communist block, including the Chinese mainland, North Korea and North Viet-Nam. Direct trade is prohibited by the statute and is a type rather easy to police; but indirect trade is also prohibited and the best way found to ban the import of illegal goods through indirect trade is

to prove the origin of the goods. United States v. Broverman, D.C., 180 F.Supp. 631. If the origin cannot be satisfactorily established before the regulatory agency authorized to license the import, it cannot be said that the withholding of the requested license as a consequence is arbitrary, capricious, or unreasonable, as long as it has been done pursuant to the proscribed regulations and with the end purpose of the initiating statute always in mind. United States v. Wagman, D.C., 168 F.Supp. 248; United States v. Weishaupt, D.C., 167 F.Supp. 211.

█ The statutory sections relied upon for jurisdiction of this cause granted only a right of action in the nature of mandamus to compel government officials or agencies to perform a duty owed but does not authorize a court to exercise discretion for them nor to influence their decisions. McEachern v. United States, D.C., 212 F.Supp. 706, reversed in part, 4 Cir., 321 F.2d 31.

In United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148, the court held that in order for a writ of mandamus to issue, the claimed right must not only be authorized by law, it must be required by it, and it will issue only where the duty to be performed is ministerial. The decisions set forth by agencies and persons holding duly authorized discretionary powers will not be disturbed by a plea for mandamus compelling action otherwise, as long as there is a factual, reasonable basis for the decision. State of New York v. United States, 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492; Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788.

█ Upon consideration of the testimony, pleadings, affidavits and exhibits, it is the court's conclusion that the defendants were not arbitrary, capricious, or unreasonable, in setting up the requirements for the entry into this country of Chinese antique furniture from Singapore.

Under the state of the record the court may not substitute its discretion for that of the defendants which they exercised under the authority of the applicable statutes and regulations. The court will accordingly find the issues herein for the defendants.

This memorandum opinion is adopted as the findings of fact and conclusions of law by the court and the clerk will enter the proper judgment in favor of the defendants.